UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KENNETH H.,

                            Plaintiff,

           v.

FRANK J. BISIGNANO,[1] Commissioner of
  Social Security,


                         Defendant.
_____

**DECISION**
**and**
**ORDER**

**23-CV-921-LGF**

**(consent)**

APPEARANCES:        FREDERICK LAW OFFICES, PLLC
                               Attorneys for Plaintiff
                               SARAH A. FREDERICK, of Counsel
                               4467 S. Buffalo Street
                               Orchard Park, New York  14127

                               MICHAEL DiGIACOMO
                               UNITED STATES ATTORNEY
                               Attorney for Defendant
                               Federal Centre
                               138 Delaware Avenue
                               Buffalo, New York  14202
                                     and
                               LAUREN ELIZABETH MEYERS
                               Special Assistant United States Attorney, of Counsel
                               Social Security Administration
                               Office of General Counsel
                               6401 Security Boulevard
                               Baltimore, Maryland  21235

## **JURISDICTION**

On October 2, 2025, the parties to this action consented pursuant to 28 U.S.C.

---

[1] Frank J. Bisignano became the Commissioner of the Social Security Administration on May 7, 2025, and, pursuant to Fed.R.Civ.P. 25(d), is substituted as Defendant in this case.  No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

§ 636(c) to proceed before the undersigned in accordance with this court's June 29, 2018 Standing Order.  The matter is presently before the court on motions for judgment on the pleadings filed by Plaintiff on May 2, 2024 (Dkt. 10), and by Defendant on August 2, 2024 (Dkt. 16).

## BACKGROUND

Plaintiff Kenneth H. ("Plaintiff"), brings this action under Title II of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking judicial review of the Commissioner of Social Security's final decision denying Plaintiff's application filed with the Social Security Administration ("SSA") on August 28, 2019, for Social Security Disability Insurance benefits ("DIB") under Title II of the Act ("disability benefits") ("original application").  Plaintiff alleges he became disabled on February 28, 2018, based on back problems.  AR[2] at 161, 177, 184.  Plaintiff's claim initially was denied on December 13, 2019, AR at 60-72, and upon reconsideration on April 30, 2020.  AR at 73-86.

On May 6, 2020, Plaintiff requested an administrative hearing, AR at 108, which was granted with the administrative hearing held by telephone conference on December 16, 2020, before Administrative Law Judge ("ALJ") Gitel Reich ("ALJ Reich"), located in New York, New York ("the first administrative hearing").  AR at 37-59.  Appearing and testifying by telephone at the first administrative hearing were Plaintiff, represented by legal counsel Felice Brodsky, Esq., along with an impartial vocational expert ("VE") Jane Gerrish ("VE Gerrish").

---

[2] References to "AR" are to the Bates-numbered pages of the Administrative Record electronically filed by Defendant on November 3, 2023 (Dkt. 3).

On December 23, 2020, the ALJ issued a decision denying Plaintiff's claim, AR at 20-36 ("First ALJ Decision"), which Plaintiff timely appealed to the Appeals Council ("administrative appeal"). AR at 158-60. On September 3, 2021, the Appeals Council denied Plaintiff's request for review, AR at 1-7, rendering the ALJ's Decision the Commissioner's final decision on Plaintiff's original application at that time. In connection with Plaintiff's administrative appeal, Plaintiff submitted to the Appeals Council new medical evidence which the Appeals Counsel considered, but did not find showed a basis for changing the outcome of the ALJ's Decision because it was either duplicative of evidence already in the administrative record, or did not pertain to the period at issue. AR at 1-2, 13-19.

On October 14, 2021, Plaintiff commenced an action in this court challenging the administrative denial of his original application for disability benefits. *Kenneth H. v. Commissioner of Social Security*, 21-CV-1122-EAW (W.D.N.Y.) ("*Kenneth H.*"). On November 30, 2021, Plaintiff filed another application for DIB ("second application") asserting a disability onset date of December 24, 2020. AR at 648-54. In connection with the second application, Plaintiff listed his medical conditions as lumbar spine issues, disc herniations, and back pain. AR at 707.

In a Stipulation and Order for Remand filed September 22, 2022 ("the S&O"), *Kenneth H. v. Comm'r of Soc. Sec.*, 21-CV-1122-EAW, Dkt. 17 (W.D.N.Y. Sept. 22, 2022); AR at 453-54, United States Chief District Judge Elizabeth A. Wolford ("Judge Wolford"), remanded the matter to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) and for further proceedings consistent with the parties' stipulation. AR at 453.

By Order dated December 22, 2022, the Appeals Council vacated the First ALJ Decision and remanded the matter to the ALJ for further administrative proceedings consistent with the S&O including a new administrative hearing and taking any action necessary to complete the administrative record and issue a new decision in accordance with the S&O.  AR at 456-61 ("Remand Order").  The ALJ was specifically instructed to evaluate the supportability and consistency factors for all medical source opinion evidence, give further consideration to Plaintiff's maximum residual functional capacity ("RFC") and provide appropriate rationale with specific references to the evidence of record supporting the assessed limitations, and obtain supplemental evidence from a VE to clarify the effect of the assessed limitations on Plaintiff's occupational base.  *Id*. at 458-59.  The Appeals Council further found that Plaintiff's second application was a duplicate of the original application and ordered the second application and its associated evidence be consolidated with the original application.  *Id*. at 459.

Accordingly, on March 3, 2023, a second administrative hearing ("the second hearing") was held by telephone before ALJ Paul Georger ("ALJ Georger" or "the ALJ") located in Buffalo, New York.  AR at 387-409.  Appearing by telephone at the second hearing were Plaintiff, represented by Nathaniel Yood, Esq., and VE Steven Feinstein ("VE Feinstein").  On May 3, 2023, ALJ Georger issued a decision denying Plaintiff's claim. AR at 33-386 ("Second ALJ Decision"), which is the Commissioner's final decision on Plaintiff's disability benefits claim.  On September 1, 2023, Plaintiff commenced the instant action. seeking review of the Second ALJ Decision denying Plaintiff disability benefits.

On May 2, 2024, Plaintiff moved for judgment on the pleadings (Dkt. 10) ("Plaintiff's Motion"), attaching the Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings (Dkt. 10-1) ("Plaintiff's Memorandum").  On August 2, 2024, Defendant moved for judgment on the pleadings (Dkt. 16) ("Defendant's Motion"), attaching the Commissioner's Brief in Support of the Commissioner's Motion for Judgment on the Pleadings and in Response to Plaintiff's Brief Pursuant to Local Rule 5.5 (Dkt. 16-1) ("Defendant's Memorandum").  Neither party filed any reply.  Oral argument was deemed unnecessary.

Based on the following, Plaintiff's Motion is DENIED; Defendant's Motion is GRANTED.


**FACTS**[3]

Plaintiff Kenneth H. ("Plaintiff"), born May 2, 1971, was 46 years old as of his alleged disability onset date ("DOD") of February 28, 2018 on his original application, 49 year old as of his alleged DOD of December 24, 2020, on his second application, and 52 years old as of May 3, 2023, the date of the Second ALJ Decision.  AR at 161, 366, 379, 648.  Plaintiff has two adult children and lives in a house with, as of the first hearing, his wife and step-son and, as of the second hearing, his wife and mother-in-law.  AR at 302, 393, 872, 890.  Plaintiff has a driver's license and was driving as of the first hearing, AR at 45, but had stopped driving at the time of the second hearing because of his impairments.  AR at 393-94.  Plaintiff was in special education classes in

---

[3] In the interest of judicial economy, recitation of the Facts is limited to only those necessary for determining the pending motions for judgment on the pleadings.

school,[4] completed the eleventh grade, but did not graduate, nor has Plaintiff obtained a GED, did not serve in the military, and has not completed any specialized training, trade, or vocational school.  AR at 178, 197, 394, 704, 708.  Most of Plaintiff's past relevant work ("PRW") was as an auto mechanic and auto body shop work, but Plainitff stopped working because of his condition.  AR at 187, 302,

It is undisputed Plaintiff suffers from a back impairment and a history of opioid addiction secondary to his back pain.  Plaintiff obtains primary care at Acacia Family Health NP PLLC, where he sees family nurse practitioner ("FNP") Michael J. Ostolski ("FNP Ostoloski").  AR at 265-68, 280-83, 906-40.  Plaintiff has a long history of substance abuse, including opioid dependence for which Plaintiff is treated by family medicine specialist Anita Wiliams, M.D. ("Dr. Williams"), who regularly prescribes Suboxone (opioid addiction treatment).  AR at 312-54.

From May 28, 2019 to June 27, 2019, Plaintiff sought treatment for his back impairment at University at Buffalo Neurosurgery ("UBNS") where he saw neurosurgeon Michael R. Stoffman, M.D. ("Dr. Stoffman").[5]  AR at 254-60, 269-70, 274-75.  Dr. Stoffman diagnosed Plaintiff with spondylolisthesis of the lumbar region, confirmed by diagnostic imaging, for which Plaintiff needed a minimum 2-3 level lumbar fusion, but given Plaintiff's multiple negative psychological stressors, Plaintiff was a poor candidate for such intervention and Dr. Stoffman opined Plaintiff "would be better off with lifestyle adjustment."  AR at 260, 275.

---

[4] The original application indicates Plaintiff was not in special education classes.  AR at 178.

[5] Plaintiff erroneously refers to Dr. Stoffman as "Dr. Hoffman."  *See*, *e.g.*, Plaintiff's Memorandum at 8, 23.

On September 19, 2019, Plaintiff sought treatment at the emergency department of Millard Fillmore Suburban Hospital in Amherst, New York for complaints of increasing right lower back pain radiating into the right anterior thigh with standing.  AR at 285-88.  Plaintiff was diagnosed with radiculopathy of lumbar region and acute chronic back pain that significantly improved with Toradol (non-narcotic prescription nonsteroidal anti-inflammatory drug).  AR at 287.

On April 29, 2021, Plaintiff underwent an initial neurosurgical consultation with neurosurgeon Franco Vigna, M.D. ("Dr. Vigna") with Spine Surgery of Buffalo Niagara, LLC ("Spine Surgery").  AR at 869-874.  Upon examination and review of diagnostic imaging, Dr. Vigna diagnosed intervertebral disc degeneration in the lumbosacral region, radiculopathy in the lumbar and lumbosacral region, spondylolisthesis of the lumbosacral region (spinal condition where one vertebra slips forward over the vertebra below), and secondary scoliosis of the lumbar region, for which a two stage, two level lumbar spine surgery was recommended.  *Id*. at 870.  Despite agreeing to undergo the surgery, Plaintiff was unable to do so either because his insurance company would not cover the cost, *id*. at 399, 873, or because Spine Surgery did not accept Plaintiff's insurance.  AR at 910.[6]

Plaintiff underwent diagnostic testing on several occasions.  Lumbar spine X-rays taken May 13, 2019, showed narrowing of the disc space between L4 and S1, and retrolisthesis (vertebra slips backward in relation to the one below) of L4 over L5, and the impression was degenerative changes in the lower lumbar spine.  AR at 245.  Lumbar spine X-rays taken on June 17, 2019, showed bilateral pars defects (stress

---

[6] The precise reason Plaintiff could not have the Spine Surgery recommended by Dr. Vigna is not clear from the record.

fractures) of L5 with foreshortening of the AP dimension of the L5 vertebral body (stress fracture of the L5 vertebra causing shortening of the vertebra) consistent with longstanding pars defects, intervertebral disc space narrowing at L4-L5 and L3-L4, osteophyte formation (bone spur) on the right side at L3-L4, Grade 1 (mild) anterior spondylolisthesis of L5 on S1  which remains stable between flexion and extension, and retrolisthesis of L4 on L5 which remains stable between flexion and extension.  AR at 250.  Lumbar spine MRI taken the same day revealed longstanding pars defects of L5 with foreshortening of the AP dimension of the L5 vertebral body, lateral disc protrusion in the neural foramen (opening on side of vertebrae through which nerve roots pass) is present contributing to severe foraminal stenosis (compression of foramen) on the left, moderate foraminal narrowing on the right, subligamentous shallow broad base central disc protrusion (a mild, non-surgical (usually) disc issue where the inner disc material pushes slightly out but remains contained by the outer annulus and rear ligament)[7] at L4-L5 with only slight impression into the thecal sac with bilateral mild foraminal narrowing, far right lateral disc protrusion at L3-L4 contacting the existing right L3 nerve root and small underlying disc bulge.  AR at 251-52.  Further MRI imaging of Plaintiff's lumbar spine taken January 20, 2021, revealed bilateral pars defects at L5 with Grade 1 anterior spondylolisthesis of L5 on S1, severe right recesses and neural foraminal narrowing at L5-S1 with the canal patent (unobstructed and functioning normally), prominent disc herniation with mild retrolisthesis of L4 on L5 causing severe bilateral recesses and moderate bilateral neural foraminal narrowing, and severe right recesses

---

[7] Taken from NIH: National Library of Medicine, National Center for Biotechnology Information, Lumbar Disc Herniation, *available at*: https://www.ncbi.nlm.nih.gov/books/NBK560878/, *last visited* Feb. 12, 2026.

and neural foraminal narrowing at L2-L3 and L3-L4, due to right foraminal disc herniations and facet arthropathy with mild left neural foraminal narrowing.  *Id*. at 357.

In connection with his disability benefits application, on November 27, 2019, Plaintiff underwent a psychiatric evaluation by consultative psychologist Susan Santarpia, Ph.D. ("Dr. Santarpia"), whose examination was essentially normal with Dr Santarpia diagnosing opiate dependence/abuse, sustained with agonist (drug) therapy. AR at 302-05.  That same date, Plaintiff underwent an internal medicine examination by consultative physician Nikita Dave, M.D. ("Dr. Dave"), who diagnosed low back pain which may benefit from bracing to prevent the extremes of sharp pain with range of motion, and chronic tobacco use.  AR at 307-10.  Dr. Dave's medical source statement included that "[t]here *may* be moderate limitation for prolonged sitting, standing, bending, twisting, heavy lifting, carrying due to lumbar spine."  *Id*. at 309 (italics added).

Plaintiff's medical records were reviewed on December 9, 2019, by State Agency review physician H. Miller, D.O. ("Dr. Miller"), AR at 68-70, and on December 10, 2019, by State Agency review psychiatrist H. Tzetzo, M.D. ("Dr. Tzetzo").  AR at 66-67.  Dr. Miller completed a Physical RFC Assessment that was consistent with light work[8] with postural limitations for occasional climbing ramps/stairs/ladders/ropes/scaffolds, stooping, bending, kneeling, crouching, and crawling.  AR at 68-70.  Dr. Tzetzo completed a Psychiatric Review Technique concluding that "no mental medically determinable impairments [are] established," noting Plaintiff's history of substance

---

[8] As relevant,

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.

20 C.F.R. § 416.967(b).

abuse and dependence, *id*., and opined that "[b]ased on the evidence taking into consideration any of the claimant's alleged physical problems, [Plaintiff] should be able to handle normal work pressures, psychiatrically speaking . . . ." *Id*. at 66.

In connection with Plaintiff's request for review of the initial decision denying his disability benefits application, Dr. Miller's Physical RFC Assessment and Dr. Tzetzo's Psychiatric Review Technique were reviewed by other State Agency medical personnel. In particular, on March 5, 2020, State Agency review internist J. Lawrence, M.D. ("Dr. Lawrence"), reviewed Plaintiff's medical records and completed a Physical RFC Assessment that was consistent with light work, but found no postural limitations, and otherwise affirmed Dr. Miller's Physical RFC Assessment. AR at 82-83. On March 12, 2020, State Agency review psychologist O. Fassler, Ph.D. ("Dr. Fassler"), completed a Psychiatric Review Technique concluding that "no mental medically determinable impairments [are] established," noting Plaintiff's history of substance abuse and dependence, *id*., and opined that Plaintiff "should be able to handle normal work pressures, psychiatrically speaking . . . ," and affirmed Dr. Tzetzo's psychiatric assessment. AR at 80.

In connection with Plaintiff's second application for disability benefits, Plaintiff's medical records in Plaintiff's SSA file pertaining to the second disability benefits application were reviewed on January 27, 2022, by State Agency review physician J. Koenig, M.D. ("Dr. Koenig"), who declined to complete a Physical RFC Assessment because there was "insufficient evidence to rate alleged impairments as physical exam with ROM [range of motion] prior to DLI [date last insured] 12/31/2020 is necessary to make a medical determination and is unavailable for review." AR at 437-38. In

connection with Plaintiff's request for review of the denial of his second disability benefits application, on June 15, 2022, State Agency review psychologist L. Dekeon, Ph.D ("Dr. Dekeon"), reviewed Plaintiff's medical records and opined there was insufficient evidence to establish disability for the adjudicative period, and no mental medically determinable impairment was established prior to Plaintiff's DLI.  AR at 449. On June 16, 2022, State Agency review internist C. Krist, D.O. ("Dr. Krist"), reviewed the contents of the SSA file pertaining to the second disability benefits application and declined to provide a medical opinion on Plaintiff's RFC because there was "insufficient evidence to rate alleged impairments as physical exam with ROM prior to DLI 12/31/2020 is necessary to make a medical determination and is unavailable for review."  AR at 448.

## **DISCUSSION**

### 1.    **Standard and Scope of Judicial Review**

A claimant is "disabled" within the meaning of the Act and entitled to disability benefits when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 416(i)(1); 1382c(a)(3)(A).  A district court may set aside the Commissioner's determination that a claimant is not disabled if the factual findings are not supported by substantial evidence, or if the decision is based on legal error.  42 U.S.C. §§ 405(g), 1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003).  In reviewing a final decision of the SSA, a district court "is limited to determining whether

the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. It is not, however, the district court's function to make a *de novo* determination as to whether the claimant is disabled; rather, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine whether the SSA's findings are supported by substantial evidence. *Id*. "Congress has instructed . . . that the factual findings of the Secretary,[9] if supported by substantial evidence, shall be conclusive." *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

In short, the issue is not whether substantial evidence supports the claimant's argument, but "whether substantial evidence supports *the ALJ's decision*." *Bonet ex rel. T.B. v. Colvin*, 523 Fed.Appx. 58, 59 (2d Cir. 2013) (italics in original). "Under this 'very deferential standard of review,' 'once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*.'" *Id*. at 58-59 (quoting *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (italics in original).

---

[9] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

2.    **Disability Determination**

The definition of "disabled" is the same for purposes of receiving SSDI and SSI benefits.[10]  *Compare* 42 U.S.C. § 423(d) *with* 42 U.S.C. § 1382c(a).  The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.  *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982).  The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which the benefits are claimed.  20 C.F.R. §§ 404.1520(b) and 416.920(b).  The second step is whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities, as defined in the relevant regulations.  20 C.F.R. §§ 404.1520(c) and 416.920(c).  Third, if there is an impairment and the impairment, or its equivalent, is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations ("Appendix 1" or "the Listings"), and meets the duration requirement of at least 12 continuous months, there is a presumption of inability to perform substantial gainful activity, and the claimant is deemed disabled, regardless of age, education, or work experience.  42 U.S.C. §§ 423(d)(1)(A) and 1382a(c)(3)(A); 20 C.F.R. §§ 404.1520(d) and 416.920(d).  As a fourth step, however, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's residual functional capacity ("RFC") which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding the limitations posed by the applicant's collective impairments, *see* 20

---

[10] Although the SSI program has special economic eligibility requirements, the requirements for establishing disability under Title II, 42 U.S.C. § 423(d), and Title XVI, 42 U.S.C. § 1382c(a)(3), are identical, so that "decisions under these sections are cited interchangeably."  *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

C.F.R. §§ 404.1520(e)-(f), and 416.920(e)-(f), and the demands of any past relevant work ("PRW").  20 C.F.R. §§ 404.1520(e) and 416.920(e).  If the applicant remains capable of performing PRW, disability benefits will be denied, *id*., but if the applicant is unable to perform PRW relevant work, the Commissioner, at the fifth step, must consider whether, given the applicant's age, education, and past work experience, the applicant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy."  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c). The burden of proof is on the applicant for the first four steps, with the Commissioner bearing the burden of proof on the final step.  20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).  All five steps need not be addressed because if the claimant fails to meet the criteria at either of the first two steps, the inquiry ceases and the claimant is not eligible for disability benefits, but if the claimant meets the criteria for the third or fourth step, the inquiry ceases with the claimant eligible for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.

In the instant case, the ALJ found Plaintiff meets the Act's insured status requirement for DIB through December 31, 2020, AR at 368, and has not engaged in substantial gainful activity ("SGA") since February 28, 2018, Plaintiff's asserted disability onset date ("DOD") in his original application.  AR at 369.  The ALJ found Plaintiff suffers from the severe impairment of degenerative disc disease of the lumbar spine with spondylolisthesis and radiculopathy, *id*. at 369, but that Plaintiff's medically managed opioid dependence in remission, chronic obstructive pulmonary disease ("COPD"), type-2 diabetes, thyroid disorder, hyperlipidemia, psoriasis, and insomnia are

well-managed and non-severe, AR at 367, and that Plaintiff's medically determinable mental impairments of attention deficit hyperactivity disorder ("ADHD"), and anxiety and depression did not singly or in combination cause more than minimal limitation in the Plaintiff's ability to perform basic mental work activities and are therefore non-severe. *Id*. at 369-71.  The ALJ thus found that Plaintiff does not have an impairment or combination of impairments meeting or medically equal to the severity of any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1, *Id*. at 372-72, and despite Plaintiff's impairments, the ALJ found Plaintiff retains the RFC to perform light work as defined by 20 C.F.R. § 416.967(b) with postural limitations to occasionally climbing ramps and stairs, never climbing ladders, ropes, or scaffolds, and the ability to occasionally balance, stoop, kneel, crouch, and crawl.  *Id*. at 372-77.  The ALJ further found Plaintiff is incapable of performing his PRW as an automobile mechanic.  *Id*. at 377.  Given Plaintiff's age, limited education, work experience, with transferability of skills not material to the disability determination, and RFC, there are jobs existing in significant numbers in the national economy including as a photocopy machine operator, mail clerk, and office helper such that Plaintiff has not been disabled from February 28, 2018, the disability onset date alleged in the original application, through December 31, 2020, the date last insured for DIB.  *Id*. at 377-78.  Accordingly, the ALJ found Plaintiff was not disabled as defined in the Act from May 12, 2019, the asserted DOD, through the date of the ALJ's Decision.  *Id*. at 38.

**3.    Analysis of Plaintiff's Arguments**

In support of his motion, Plaintiff argues that upon remand from the Appeals Council, the ALJ formulated an RFC that did not include the sit/stand option that was in

the RFC set forth in the First ALJ Decision, despite medical recommendations, supported by diagnostic imaging, for spinal surgery, Plaintiff's Memorandum at 20-23, and the ALJ also failed to properly evaluate medical opinions of Dr. Dave and FNP Ostolski according to the factors of supportability and consistency. *Id*. at 23- 26. Defendant argues the Appeals Council, by vacating the First ALJ Decision and remanding the matter for a new decision, also vacated the earlier RFC determination including the sit/stand option, Defendant's Memorandum at 8-9, Plaintiff has not demonstrated his RFC required a sit/stand option, Defendant's Memorandum at 7-8, and substantial evidence in the record supports the RFC formulated by the ALJ in the Second ALJ Decision. *Id*. at 9-11.  Defendant further argues the ALJ properly considered Dr. Dave's medical opinion in accordance with the Appeals Council's Remand Order. *Id*. at 12-14.

Initially, the court considers whether ALJ Georger erred by formulating an RFC that did not include the sit/stand option found in the RFC formulated by ALJ Reich in the First ALJ Decision.  In addition to vacating the First ALJ Decision, the Remand Order directed ALJ Georger to "[g]ive further consideration to the medical source opinion(s) pursuant to the provisions of 20 C.F.R. 404.1520c," "give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations," and [i]f warranted by the expanded record, obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base . . . ."  AR at 459.

In a Social Security action, upon remand, the Commissioner is permitted "'to revisit any issues as long as the court has not remanded the case with specific instructions or made findings of fact.'" *Chantel P. v. Comm'r of Soc. Sec.*, 2025 WL 1570108, at * 5 (W.D.N.Y. June 3, 2025) (quoting *Pavon v. Comm'r of Soc. Sec.*, 2020 WL 1131220, at * 4 (W.D.N.Y. Mar. 9, 2020). *See also Elizabeth P. v. Comm'r of Soc. Sec.*, 2024 WL 2812434, at *3 (W.D.N.Y. June 3, 2024) (where nothing in the Appeals Council's remand order can be construed as requiring the ALJ to make the same findings as made in a prior decision, the ALJ is "free to make findings that differed from those in the earlier decision."). Relevantly, here, the Appeals Council did not specifically direct ALJ Georger to include in the RFC formulation the sit/stand option, and the ALJ's failure to do so therefore is not error. *See Chantel P.*, 2025 WL 1570108, at * 5 (addressing the law of the case doctrine in the context of a Social Security action); *Elizabeth P.*, 2024 WL 2812434, at *3 (rejecting the plaintiff's argument that the findings in the prior ALJ's decision that certain physical impairments were severe "constituted a 'rule of mandate' requiring the ALJ to make the same findings in this [subsequent] decision").

Significantly, no treatment provider specifically found Plaintiff requires a sit/stand option to work; rather, Plaintiff relies on Plaintiff's self-reported statements on his original application and testimony at the first hearing that both prolonged standing and sitting cause Plaintiff severe back pain. *See* AR at 42 (Plaintiff testifying at first hearing that sitting or standing for too long causes shooting pains); AR at 200 (Plaintiff stating on Function Report – Adult, completed in connection with original application, that Plaintiff does not perform yard work because standing for too long causes shooting

pains in his lower back and legs, and "mowing is too bouncy . . . ."). Plaintiff also relies on FNP Ostolski's treatment notes pertaining to a January 26, 2021 telehealth encounter[11] that Plaintiff complained of extreme pain with prolonged standing or sitting requiring Plaintiff to lie down. AR at 361. Such self-reported descriptions of pain, however, are not substantial evidence to support a disability benefits claim. *See Polynice v. Colvin*, 576 Fed.Appx. 28, 31 (2d Cir. 2014) (the plaintiff's own complaints of pain were insufficient to corroborate medical opinion based largely on such self-reports); *Roma v. Astrue*, 468 Fed.Appx. 16, 19 (2d Cir. 2012) (the plaintiff's subjective statements alone were insufficient to support a doctor's limitations based predominantly on such complaints). Accordingly, there is no merit to this aspect of Plaintiff's arguments.

Nor did ALJ Georger err in his consideration of the medical opinions of record. For claims filed on or after March 27, 2017, the relevant regulations provide that

> We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s),[12] including those from your medical sources. When a medical source provides one or more medical opinions or prior administrative medical findings, we will consider those medical opinions or prior administrative medical findings from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate....

20 C.F.R. § 404.1520c(a).

---

[11] Because of precautions related to the COVID-19 pandemic, at least two of Plaintiff's appointment with FNP Ostolski were "telehealth encounters" during which FNP Ostoloski did not physically examine Plaintiff.

[12] "A prior administrative medical finding is a finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review ... in your current claim based on their review of the evidence in your case ...." 20 C.F.R. § 404.1513(a)(5). In the instant case, no prior administrative medical finding is at issue.

In particular, when more than one medical opinion are provided by medical sources, the Commissioner will consider the medical opinions together according to five factors including (1) supportability; (2) consistency; (3) the medical's source's relationship with the claimant; (4) specialization; and (5) any other factors that "tend to support or contradict a medical opinion or prior administrative medical finding."  20 C.F.R. § 404.1520c(c).  When evaluating the persuasiveness of a medical opinion, the two most important factors are supportability and consistency, 20 C.F.R. § 404.1520c(a), and the ALJ must articulate he or she considered the "supportability" and "consistency" of a medical source's opinion, 20 C.F.R. § 404.1520c(b)(2), but is not required to articulate consideration of the remaining factors.[13]  *Id.*  *See also Rachel L. v. Bisignano*, 2025 WL 2601904, at * 5 (W.D.N.Y. Sept. 9, 2025) (discussing the ALJ's requirement to articulate how he "considered the 'supportability' and 'consistency' of a medical source's opinion").  In the instant case, there is no merit to Plaintiff's argument that the ALJ erred in failing to consider the supportability and consistency of medical opinions rendered by Dr. Dave and FNP Ostolski.

As ALJ Georger observed, Dr. Dave opined, based on a single consultative physical examination of Plaintiff, that Plaintiff "may have moderate limitation for prolonged sitting, standing, bending, twisting, heavy lifting, carrying due to lumbar spine."  AR at 376.  The ALJ, however, found this assessment was not supported by Dr.

---

[13] In the interest of completeness, the court notes that where the ALJ fails to articulate the supportability and consistency factors with regard to opinions found persuasive, such error is harmless where the record establishes application of the correct legal standard would not have changed the outcome of the disability determination. *See Scott A. v. Comm'r of Soc. Sec.*, 2022 WL 3141707, at * 5-6 (N.D.N.Y. May 3, 2022) (applying harmless error standard where the ALJ failed to articulate the supportability and consistency factors in assessing the persuasiveness of a physician's opinion where application of the correct legal standard, including the supportability and consistency factors, would not have resulted in a different conclusion).

Dave's own findings upon physically examining Plaintiff, including that Plaintiff needed no assistance changing for the examination, had a mildly "crouched" gait which term is not explained and does not appear elsewhere in the record, and despite the "crouched" gait, Plaintiff could walk on heels and toes without difficulty, and rise from a chair without difficulty. AR at 376. Although Plaintiff has some reduced range of motion ("ROM") in his lumbar spine, straight leg raising test was negative, Plaintiff had no tenderness, had full strength in all extremities, and sensation was diminished only slightly and only on the left shin. *Id*. The ALJ further considered that Dr. Dave's examination findings "generally mirror the stable findings in the record," including that Plaintiff was often found to have a normal gait, and full strength. *Id*. (citing, *e.g.*, AR at 270 (May 28, 2019 consultative examination by Dr. Stoffman showed Plaintiff "walks with appropriate gate and station," "nontender through the spinal axis," slightly diminished deep tendon reflexes in upper and lower extremities, full strength in all muscle groups in upper and lower extremities, "straight leg raise is negative for back pain," and "[i]nternal and external rotation of both hips is negative for pain"); AR at 274 (same findings by Dr. Stoffman on June 27, 2019); 285-87 (Millard Fillmore emergency department note reporting that on September 9, 2019, Plaintiff denied drop foot or weakness to the lower extremities and bilateral extremities strength was 5/5); 872 (Dr. Vigna examining Plaintiff on April 29, 2021, and reporting Plaintiff had a slow gait, normal muscle tone of spine and hips, reduced ROM of spine, and despite positive straight leg raise test bilaterally,[14] lower extremities were normal to inspection with no obvious instability and full ROM bilaterally, hips showed no obvious instability, strength

---

[14] FNP Ostolski does not indicate at what level, *i.e.*, degree of straight leg raising, the test was positive.

was 4/5 bilaterally, and muscle tone was normal bilaterally); AR at 917 (FNP Ostolski reporting on May 2, 2022 that Plaintiff denied gait abnormalities).

Although not specifically referenced by the ALJ with regard to Dr. Dave's opinion, Plaintiff also repeatedly reported to Dr. Williams that his back was improving.  AR at 327 (Plaintiff "reports his back is much improved" on February 3, 2020); AR at 320 (Plaintiff reporting "his back is still improving" on August 17, 2020); AR at 319 (same on September 14, 2020); AR at 318 (same on October 12, 2020).

The ALJ's observation that in her opinion, Dr. Dave equivocally stated that Plaintiff "may" have a moderate limitation for "prolonged sitting, standing, bending, twisting, heavy lifting, carrying due to lumbar spine," AR at 309, also supports the ALJ's formulation of an RFC limiting Plaintiff to light work.  *See Paula S. v. Kijakazi*, 2023 WL 2266402, at *3 (W.D.N.Y. Feb. 28, 2023) ("[W]hile the case law is not well settled, many courts in this Circuit have concluded that an RFC for light work—involving up to six hours of standing and walking per day—is not inconsistent with medical opinions specifying up to moderate limitations in prolonged standing walking, lifting, etc.") (citation and internal quotation marks omitted). *See also Christopher P. v. Comm'r of Soc. Sec.*, 2024 WL 2831839, at *4 (W.D.N.Y. June 4, 2024) ("Additionally, Courts in this Circuit have found that a physician's description of 'moderate' limitations is often consistent with the ability to perform light work.") (citation omitted); *Gurney v. Colvin*, 2016 WL 805405, at * 3 (W.D.N.Y. Mar. 2, 2016) (holding the ALJ's determination that the plaintiff could perform light work accounted for the physical limitations identified by an examining physician, including "moderate limitations with respect to repetitive heavy lifting, bending, reaching, pushing, pulling, or carrying" (internal quotation marks

omitted)).  As such, by limiting Plaintiff to light work, ALJ Georger implicitly incorporated

Dr. Dave's opinion that Plaintiff may have "moderate limitation for prolonged sitting,

standing, bending, twisting, heavy lifting, carrying due to lumbar spine."  AR at 309.

*See Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009) ("The full range of light work

requires intermittently standing or walking for a total of approximately 6 hours of an 8-

hour workday, with sitting occurring intermittently during the remaining time." (citing 20

C.F.R. § 404.1567(b))); *Deshantal W. v. Comm'r of Soc. Sec.*, 2024 WL 1157048, at *14

(W.D.N.Y. Mar. 18, 2024) (plaintiff's primary care physician's opinion that plaintiff was

"very limited" in lifting, carrying, pushing, and pulling was consistent with RFC for light

work); *Moxham v. Comm'r of Soc. Sec.*, 2018 WL 1175210, at *8 (W.D.N.Y. Mar. 5,

2018) (opinion of consultative examiner that plaintiff had "marked" limitations for

squatting, lifting, and carrying was not inconsistent with light work).  The ALJ thus

sufficiently considered Dr. Dave's opinion with regard to the supportability and

consistency factors.

The ALJ also considered the supportability and consistency factors with regard to

FNP Ostolski who made statements August 19, 2019, that MRI and neurology surgical

consultation were "supportive of disability lifelong impairment," AR at 280, that Plaintiff

"has marked limitation on work," *id*., "min[imal] ability to bend/lift, prolonged sitting or

standing," *id*., and "rec[ommended] disability and legal consult."  *Id*.  In determining such

statements were not persuasive, the ALJ referenced further statements by FNP Ostloski

including on May 10,2019, that Plaintiff "is not able to work," AR at 282, and on January

26, 2021, that Plaintiff is "not able to work [due to] him having to lie flat frequent[ly] for

his pain . . . ."  *Id*. at 906.  The ALJ observed that such statements are "conclusory" for

which the ALJ was not required to articulate whether the statements are inherently valuable or not persuasive.  AR at 376 (citing 20 C.F.R. § 404.1520b(c) (providing, *inter alia*, that statements regarding whether a claimant is "disabled, blind, able to work, or able to perform regular or continuing work," constitute "[e]vidence that is inherently neither valuable nor persuasive"), and 20 C.F.R. § 416.920b(c) (same).  The ALJ also found not persuasive FNP Ostolski's statement on August 19, 2019, that Plaintiff has a "minimum ability to bend/lift, prolonged sitting or standing," AR at 280, because it is unclear as to whether these symptoms are self-reported by Plaintiff or FNP Ostolski's opinion as to Plaintiff's functional limitations.  *Id*. at 376.  ALJ Georger's determination that FNP Ostolski's findings are not persuasive is consistent with other reports by FNP Ostolski.  *See*, *e.g.*, AR at 267-78 (reporting that annual exam and physical exam on May 10, 2019, showed Plaintiff with "left lower back tenderness, paraspinal spasms," but no mention of Plaintiff's gait, strength, or ROM of lower back); AR at 920-21 (describing on August 22, 2022, Plaintiff's musculoskeletal symptoms as constant moderate to severe low back pain that intermittently radiates down the legs, with associated weakness of the legs and back and on July 21, 2022, Plaintiff's spine showed full strength and full ROM, and lower extremities showed no instability bilaterally).  Further, the court notes that few of FNP Ostolski's progress notes show that Plaintiff was actually physically examined with regard to his back impairment, *see*, *e.g.*, AR at 281 (physical examination on August 19, 2019, does not indicate Plaintiff's back was examined); 910 (same on June 24, 2021), 918 (same on May 23, 2022), and at least two were telehealth encounters for which physical examination was not possible. *See*, *e.g.*, AR at 906 (January 26, 2021); 908 (March 11, 2021).  Moreover, none of

FNP Ostolski's progress notes reviewed by the ALJ show any ROM testing. Accordingly, there is no merit to Plaintiff's argument that the ALJ failed to consider the supportability and consistency of FNP Ostolski's findings and opinions regarding Plaintiff's back impairment.

In sum, the issue is not whether substantial evidence supports the claimant's argument, but "whether substantial evidence supports *the ALJ's decision*."  *Bonet ex rel. T.B. v. Colvin*, 523 Fed.Appx. 58, 59 (2d Cir. 2013) (italics in original).  Here, under the court's "very deferential standard of review," *Brault*, 683 F.3d at 448, the plethora of evidence in the administrative record cited by the ALJ, including treatment notes and diagnostic test results, establishes "that no reasonable factfinder could [not] have reached the same conclusion," *i.e.*, that the ALJ's RFC assessment that Plaintiff, despite his impairments, remained capable of performing a full range of light work. *Schillo*, 31 F.4th at 78.  The ALJ's Decision is thus supported by substantial evidence in the record, requiring Plaintiff's Motion be DENIED and Defendant's Motion be GRANTED.

## **CONCLUSION**

Based on the foregoing, Plaintiff's Motion (Dkt. 10) is DENIED; Defendant's Motion (Dkt. 16) is GRANTED; the Clerk of Court is DIRECTED to CLOSE the file. SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:    February 12, 2026
          Buffalo, New York